**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **RANDALL L. DUDLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CAUSE NO. 1:20-cv-00087-JVB-SLC** |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Andrew Saul,* | ) |
| *Commissioner of the Social Security* | ) |
| *Administration,* | ) |
| | ) |
| **Defendant.** | ) |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Randall L. Dudley appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on April 15, 2020, by District Judge Joseph S. Van Bokkelen pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72-1(b), Northern District of Indiana Local Rule 72-1(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 7).

Having reviewed the record and the parties' arguments, I FIND one of Dudley's three arguments warrants a remand of the Commissioner's final decision, and accordingly, RECOMMEND that the Commissioner's decision be REVERSED and REMANDED. This Report and Recommendation is based on the following facts and principles of law.

## I. FACTUAL AND PROCEDURAL HISTORY

Dudley applied for DIB in July 2014 alleging disability as of June 14, 2014. (ECF 8, 18 Administrative Record ("AR") 15, 129, 145).[1] Dudley's application was denied initially and on reconsideration. (AR 15, 128-58). Following a timely request and a hearing, administrative law judge John Carlton rendered an unfavorable decision on June 29, 2017, which Dudley appealed to the district court. (AR 15-26); *see also Dudley v. Comm'r of Soc. Sec.*, 1:18-cv-215. The parties subsequently filed a joint motion to remand the case for further proceedings (AR 818-19), which the Court granted (AR 821). In the interim, on July 14, 2014, Dudley filed a separate claim for disability benefits and was found to be disabled as of June 30, 2017. (AR 768, 926).

On August 19, 2019, administrative law judge Genevieve Adamo ("the ALJ") conducted a second administrative hearing at which Dudley, who was represented by counsel; his sister; an impartial medical expert, John Jansky, Ph.D.; and a vocational expert ("VE") testified. (AR 1169-1218). On October 25, 2019, the ALJ rendered a second unfavorable decision to Dudley, concluding that he was not disabled because he could perform a significant number of unskilled, medium-exertional jobs in the national economy despite the limitations cause by his impairments. (AR 768-82). Because Dudley had been found to be disabled as of June 30, 2017, the ALJ limited her analysis to the time between June 14, 2014 (Dudley's alleged onset date), and June 30, 2017. (ECF 768). Further, because Dudley did not file any exceptions to the ALJ's most recent decision, and the Appeals Council did not assume jurisdiction of the case, that decision became the final decision of the Commissioner. 20 C.F.R. § 404.984.

---

[1] The Commissioner inadvertently failed to include the transcript of Dudley's August 19, 2019, hearing before the ALJ. (ECF 11, 13). Accordingly, the Commissioner filed a supplement to the transcript. (ECF 18). Because the AR pagination is consistent between the two filings (ECF 8, 18), the Court will continue to use the AR pagination.

Dudley filed a complaint with this Court on February 22, 2020, seeking relief from the Commissioner's final decision.  (ECF 1).  In his appeal, Dudley alleges that the ALJ:  (1) failed to incorporate all of his medically determinable limitations into his residual functional capacity ("RFC"), (2) failed to properly weigh medical opinion testimony, and (3) improperly discounted his symptom testimony.  (ECF 24 at 4).

At the time of the ALJ's most recent decision, Dudley was fifty-six years old (AR 128, 144, 228, 232), had a high school education (AR 780, 1002, 1181), and had relevant work experience as a retail store manager and sales clerk (AR 780).  In his application, Dudley alleged disability due to dislocation of both shoulders, attention deficit issues, cognitive reasoning issues, head injury/concussion, vision problems, hearing problems/ringing, dizziness, weakness, headaches, and a back injury.  (AR 128, 144).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).  "Substantial evidence must be more than a scintilla but

may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869 (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

#### A.  The Law

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed, (2) whether he has a severe impairment, (3) whether his impairment is

one that the Commissioner considers conclusively disabling, (4) whether he can perform his past relevant work; and (5) whether he is incapable of performing any work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On October 25, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 765-82). At step one, the ALJ concluded that Dudley had not engaged in substantial gainful activity in the period between his alleged onset date, June 14, 2014, and June 29, 2017. (AR 770). At step two, the ALJ found that Dudley had the following severe impairments: anxiety disorder, cognitive disorder, seizure disorder, right rotator cuff syndrome, and mild neurovascular disorder. (AR 771).

At step three, the ALJ concluded that Dudley did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 772). The ALJ then assigned Dudley the following RFC:

> [T]he claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except never climbing ladders, ropes, or scaffolds; frequent overhead reaching with the dominant upper extremity; avoid unprotected heights, dangerous moving machinery, and jobs where driving is an essential part

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

of the job; can understand, remember, and carry out simple, routine, and repetitive tasks with no production rate pace like assembly-line work with only occasional simple work-related decision making; can maintain attention and concentration for two-hour segments; could respond appropriately to routine, predictable changes in the workplace.

(AR 774).

The ALJ found at step four that Dudley was unable to perform any past relevant work. (AR 780).  At step five, though, the ALJ found that, given his age, education, work experience, and RFC, Dudley could perform certain unskilled, medium-exertional jobs that exist in substantial numbers in the national economy including industrial sweeper/cleaner, laundry laborer, and cleaner II.  (AR 781).  As such, Dudley's application for DIB was denied.  (AR 781-82).

### C.  The Mental RFC

Dudley first contends that the ALJ erred in failing to consider both his severe and non-severe impairments in formulating his RFC.  (ECF 24 at 10).  More specifically, Dudley alleges that the ALJ ignored evidence about his mental impairments that was contrary to her decision, and failed to account for his limitations in concentration, persistence, or pace in the hypothetical posed to the VE at the hearing.  (*Id.* at 10-11).  For example, Dudley points to the ALJ's step-three finding that he had a "marked" limitation in concentration, persistence, or pace (AR 773), which he asserts was not properly incorporated into the RFC formulation (ECF 24 at 12).  Dudley also argues that the ALJ failed to build a "logical bridge" between her conclusion about his limitations and the evidence she cited in support of her finding of marked limitations.  (ECF 24 at 12 (citing AR 773)).

6

In response, the Commissioner contends that the RFC formulation is supported by the medical record for the period of time considered by the ALJ. (ECF 25 at 3). The Commissioner asserts that the ALJ was not required to specifically note each piece of evidence cited in support of her findings when formulating the RFC. (*Id*. at 6 (citing *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) ("Although the RFC assessment is a function-by-function assessment, . . . the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." (internal citation and quotation marks omitted.))).

In general, the ALJ determines the severity of a claimant's mental impairment by assessing his degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Relevant to this appeal, the "paragraph B" criteria consist of four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3); *see, e.g.*, *Johnnie M. v. Berryhill*, No. 2:18-cv-00066-MJD-JMS, 2019 WL 521176, at *3 (S.D. Ind. Feb. 11, 2019); *Brynelson v. Berryhill*, 329 F. Supp. 3d 629, 638 n.6 (N.D. Ill. 2018). "[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

"The mental RFC assessment . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ." *Id.*; *see* *Virden v. Astrue*, No. 11-0189-DRH-CJP, 2011 WL 5877233, at *9 (S.D. Ind. Nov. 4, 2011).

7

That is, the RFC is an assessment of "what an individual can still do despite his . . . limitations," SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. § 404.1545(a)(1), and "must be based on *all* of the relevant evidence in the case record," SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 404.1545(a)(3). "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012). Ultimately, though, "the RFC determination is one firmly within the ALJ's discretion to determine, so long as [she] sufficiently articulates [her] reasoning and the record adequately supports [her] conclusion." *Terry v. Astrue*, No. 3:09-CV-503 JD, 2011 WL 855346, at *17 (N.D. Ind. Mar. 7, 2011) (collecting cases).

Here, as mentioned, when assessing the "paragraph B" criteria at step 3, the ALJ found that Dudley had "marked" limitation in maintaining concentration, persistence, or pace. (AR 773). When proceeding to step four, the AL assigned Dudley the following mental RFC, in relevant part:

> [Dudley] can understand, remember, and carry out simple, routine, and repetitive tasks with no production rate pace like assembly-line work with only occasional simple work-related decision making; can maintain attention and concentration for two-hour segments; could respond appropriately to routine, predictable changes in the workplace.

(AR 774). Similarly, at the hearing, the ALJ asked the VE to consider a hypothetical individual with precisely this mental RFC. (AR 1209-10 ("Please assume a hypothetical individual . . . . [who] can understand, remember, and carry out simple, routine, and repetitive tasks with no production-rate pace, like assembly-line work with only occasional simple work-related decision

making; can maintain attention, concentration for two-hour segments; can respond appropriately to routine predictable changes in the work place . . . .").

While the ALJ did not need to discuss each piece of medical evidence in the record, *see Knox*, 327 F. App'x at 657, the ALJ must generally "include all limitations supported by medical evidence in the record" in a hypothetical to the VE. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The Seventh Circuit Court of Appeals has instructed that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.")*.* Having said that, the Seventh Circuit has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* at 619. The court explained:

> We also have let stand an ALJ's hypothetical omitting the terms
> 'concentration, persistence and pace' when it was manifest that the
> ALJ's alternative phrasing specifically excluded those tasks that
> someone with the claimant's limitations would be unable to
> perform. We most often have done so when a claimant's
> limitations were stress- or panic-related and the hypothetical
> restricted the claimant to low-stress work.

*Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (upholding a hypothetical restricting the claimant to work involving low production standards and a low-stress environment, where the claimant's difficulties with concentration, persistence, or pace arose from stress-induced headaches, frustration, and anger); *Johansen v. Barnhart*, 314 F.3d 283, 288-

89 (7th Cir. 2002) (allowing a hypothetical formulated in terms of "repetitive, low-stress" work to stand, where the claimant's deficits in concentration, persistence, or pace stemmed from a panic disorder); *Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002) (finding that the ALJ's restricting the claimant from jobs "involving complex work processes or unusual levels of stress" adequately accommodated the claimant's concentration problems arising, in part, from a panic disorder)).

Here, the RFC and hypothetical failed to adequately capture Dudley's marked limitations in maintaining concentration, persistence, or pace, and as a result remand is necessary. To begin, the ALJ limited Dudley in both the RFC and the hypothetical to simple, routine, and repetitive tasks. But the Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks . . . adequately captures . . . limitations in concentration, persistence, and pace." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (internal citation and quotation marks omitted). The ALJ's restriction to no "production rate pace" or "assembly-line work," in and of itself, is similarly insufficient. *See Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019) ("[T]he ALJ's failure to define 'piecework' or 'fast-moving assembly line work' (which are not elsewhere defined) makes it impossible for a VE to assess whether a person with those limitations 'could maintain the pace proposed.'" (quoting *Varga*, 794 F.3d at 815)); *see also DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.").

10

Furthermore, it is not clear how the ALJ reached her conclusion that Dudley could maintain attention and concentration for two-hour segments. While the ALJ cited Dr. Brooks's opinion in support of her conclusion that Dudley could "could follow some simple instructions," she cites to nothing in the record that reflects Dudley could concentrate for two hours at a time. (AR 780). In fact, there is evidence in the record to suggest the contrary. As the ALJ notes, Dudley's father—who was also his employer—testified at Dudley's initial hearing that Dudley had trouble completing tasks and would leave work at unpredictable intervals. (AR 775; *see* AR 81-83).

The lack of explanation is particularly problematic given the ALJ's determination that Dudley suffered from "marked" limitation in concentration, persistence, or pace. Sister courts addressing similar situations have found remand necessary—even when considering claimants with less severe limitations. In *Warren v. Colvin*, a state agency doctor found the claimant to be moderately limited in, among other things, her ability to maintain concentration and pace for extended periods, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. No. 12 C 3298, 2013 WL 1196603, at *3 (N.D. Ill. 2013). The ALJ gave the state agency doctor's opinion "great weight" and "incorporated all of the restrictions contained in [the state agency doctor's] conclusion ('simple routine activities' and 'brief superficial contact with others') but also added that Warren 'can sustain focus and attention for at least two-hour intervals at a time' and 'can work at a normal pace.'" *Id.* at *4. The court, however, noted that absent support in the record for the two-hour limitation the ALJ impermissibly "formulated her own independent medical opinion

11

regarding the effects (or lack of effects) of Warren's moderate difficulties of concentration, persistence, or pace." *Id.* at *5 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Indeed, as the *Warren* Court observed, the ability to focus in two-hour segments is more akin to the ability of a typical worker—not one suffering from limitations in concentration, persistence, or pace. *See id.* ("[T]he Commissioner has in another recent case indicated that normal breaks occur every two hours during a regular 8–hour workday. *Braithwaite v. Commissioner of Social Security*, 2011 WL 1253395, at *5 n. 4 (E.D. Cal. March 31, 2011). . . . It does not seem to make sense to conclude, as the ALJ apparently did here, that an individual with moderate limitations in the ability to maintain attention and concentration would require the same frequency of breaks as a typical worker."); *see also Brian P. v. Saul*, No. 18 C 3498, 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) ("The ALJ did not explain how any evidence in the record translates into a finding that Brian can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals. . . . Thus, there is no logical bridge between the evidence and the ALJ's conclusion that Brian could persist in simple, routine activities in two-hour intervals, with adequate pace and perseverance."); *Kelly v. Colvin*, No. 14-CV-624-CJP, 2015 WL 1930035, at *6 (S.D. Ill. Apr. 28, 2015) ("That being said, the RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time."); *Simpson v. Astrue*, No. 1:12-CV-00163-SEB-DML, 2013 WL 1294517, at *4 (S.D. Ind. Mar. 28, 2013) ("The 'ALJ's hypothetical not only omitted reference to Plaintiff's moderate difficulties with concentration, persistence, or pace, but implied that Plaintiff indeed *had* the capability to concentrate for up to two hours. Thus, because the ALJ's hypothetical did not supply the vocational expert with

12

adequate information regarding Plaintiff's limitations, the expert was unable to determine whether there were jobs that Plaintiff could perform.").

The ALJ's hypothetical may be permissible if the VE was already aware of Dudley's limitations. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("The reason for the rule is to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert did not know the full range of the applicant's limitations. An exception therefore exists for cases in which the vocational expert independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them."). Here, while the VE was at the hearing during Dr. Jansky's testimony and had "reviewed the exhibits . . . to familiarize [himself] with [Dudley's] vocational background" (AR 1208), the transcript does not show that the VE "independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and . . . accounted for them." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). "In none of his responses did the VE rely on or even mention his review of the record or [Dudley's and Dr. Jansky's] testimony." *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). Nor did the VE testify about how any of Dudley's limitations might affect his vocational profile. *Contra Steele*, 290 F.3d at 943. As such, it appears the VE "focused his testimony on the ALJ's hypotheticals" and as a result, the Court "cannot assume that the VE based his testimony on anything but those hypotheticals." *Simila*, 573 F.3d at 521.

In summary, the ALJ failed to properly account for Dudley's marked limitations in concentration, persistence, or pace in both the RFC and the hypothetical to the VE. Additionally, the ALJ's reasoning cannot be saved by reliance on the VE's testimony as there is nothing in the

record to suggest that the VE independently learned of and accounted for Dudley's marked limitations.  Accordingly, remand is necessary on this point alone.  In the interest of completeness though, Dudley's two remaining arguments will also be discussed.

### D.  Opinion Evidence

Dudley next contends that the ALJ erred in weighing the opinion of Dr. Brooks, a psychologist, and Ms. Kracker, a mental health practitioner, as expressed in their medical source statement.  (ECF 24 at 14; *see* AR 622-27).  While the ALJ afforded Dr. Brooks's and Ms. Kracker's opinion "significant weight," she also stated that it was "not entitled to greater weight because many of the limitations are vague, uncertain, and are not given in vocationally relevant terms."  (AR 779).  Dudley now contends that the ALJ misinterpreted the opinion—especially as to his ability to "follow some simple instructions."  More specifically, he contends that the ALJ ignored the context of the opinion—that Dudley could only follow instructions in the context of the evaluation (AR 626)—without adequately considering the other limitations noted in the report.  (ECF 24 at 14-15).  Dudley also points to the supposedly consistent treatment notes from Jacob Lutz, Ph.D., H.S.P.R.  (ECF 24 at 17 (citing *Rohan v. Charter*, 98 F.3d 966 (7th Cir. 1996)).  Additionally, Dudley asserts that the ALJ erred in failing to explain what she meant by "significant weight," and for supposedly faulting Dudley for failing to obtain mental health treatment.  (ECF 24 at 14-15).

The Seventh Circuit has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances."  *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2).

14

Under the regulations in effect prior to March 27, 2017,[3] if a doctor is a "nontreating source," his or her opinion is not presumed to warrant controlling weight and an ALJ is to weigh it based on a variety of factors. *Simila*. 573 F.3d at 514. A nontreating source means a physician, psychologist—including a consultative examiner—or other acceptable source that has examined a claimant, but does not have or did not have an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502 (regulations in effect from June 13, 2011, through March 26, 2017).

In weighing an opinion from a medical source, including a nontreating source, the ALJ is to consider the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. § 404.1527(c); *see also Books*, 91 F.3d at 979. An ALJ's decision as to the weight given to a nontreating source's opinion will be upheld so long as it is supported by substantial evidence. *Simila*, 573 F.3d at 517.

To the extent that Dudley asserts that the ALJ did not appreciate the "context" of Dr. Brooks's and Ms. Kracker's medical source statement, his argument does not require remand. Despite Dudley's contention to the contrary, the ALJ specifically referenced the findings that Dudley now asserts show greater limitation than reflected in the RFC. (*Compare* ECF 24 at 15

---

[3] The regulations concerning the weight given to treating and non-treating doctors were changed proactively on March 27, 2017. Claims filed prior to that date are governed by the old regulations. *See Olivas v. Saul*, 799 F. App'x 389, 391 n.1 (7th Cir. 2019); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).

*with* AR 779). Further, the "Medical Source Statement" section of Dr. Brooks's and Ms. Kracker's opinion uses equivocal language, *see, e.g.,* AR 626 ("The client *may* be able to emotionally relate appropriately with others most of the time, however there *may* be some concerns in this regard . . ." (emphasis added)), which is not readily translated into functional terms, *compare Montoya v. Saul*, No. 2:18-CV-16-JEM, 2019 WL 3812493, at *4 (N.D. Ind. Aug. 14, 2019) ("The ALJ . . . discounted the opinion for its use [of] the term 'limited,' since it is 'vague' and 'not in vocationally specific language.' However, the medical provider completed a mental medical source statement form, including narrative sections and checkboxes, with the term 'limited' used as a checkbox option, with its meaning defined by the form itself."). While an ALJ may not reject a medical opinion for being "vague in nature without seeking clarification," *Edward H. v. Berryhill*, No. 18 C 3637, 2019 WL 1454511, at *3 (N.D. Ill. Apr. 2, 2019) (internal quotation marks omitted), the ALJ here *did* seek clarification—in the form of Dr. Jansky's testimony (*see* AR 1179 (Dr. Jansky's testimony regarding whether "[Dudley's] medical impairments [would] be expected to result in limitations that - - in his ability to function in a work setting - - and what those limitations are")).

Similarly, to the extent that the ALJ did discount Dr. Brooks's and Ms. Kracker's opinion concerning social limitations, she did so based on the testimony of Dr. Jansky—who in turn considered the opinion and the extent to which it was consistent with the record as whole—and the lack of documented social interaction limitations in either Dr. Lutz's or Dr. Brooks's and Ms. Kracker's reports, or the later consultive examination. (AR 779; *see also* AR 1158 ("No limitations with social interaction . . . ."), 1176-79). Accordingly, the ALJ did not play doctor and substitute her own analysis, but weighed the various medical opinions before relying on that

16

of Dr Jansky—as she was permitted to do.  *See Nunez v. Bowen*, No. 88 C 729, 1990 WL
156521, at *2 (N.D. Ill. Oct. 9, 1990) ("[I]t is the province of the ALJ and not the courts to
resolve conflicts in medical evidence." (citing *Strunk v. Heckler*, 732 F.2d 1357, 1364 (7th Cir.
1984))).

As to Dr. Lutz, the ALJ noted that Dr. Lutz did document "some psychiatric elements"
like "unusual thinking" and "some level of paranoia."  (AR 646-47, 780).  But the ALJ further
observed that Dr. Lutz did "not provide a mental health diagnosis or an opinion regarding
[Dudley's] functioning."  (AR 780).  Rather, Dr. Lutz merely opined that Dudley was a
"complex case" and requested that he return for neuropsychological testing.  (AR 647).  Further,
much of what Dudley cites from Dr. Lutz's report is a recitation of what Dudley and his sister
stated his symptoms to be, which—for the reasons discussed *infra*—the ALJ was permitted to
discount.  *See Ziegler v. Astrue*, 576 F. Supp. 2d 982, 998 (W.D. Wis. 2008) ("It is well settled
that an administrative law judge may disregard a medical opinion premised on the claimant's
self-reported symptoms if the administrative law judge has reason to doubt the claimant's
credibility." (collecting cases)), *aff'd*, 336 F App'x 563 (7th Cir. 2009); *see also Rice v.
Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should
rely need to be based on objective observations and not amount merely to a recitation of a
claimant's subjective complaints."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("The
portion of Dr. Cascino's report concerning Mr. Diaz's limited ability to sit, stand or walk appears
to be based upon Mr. Diaz's own statements about his functional restrictions at the time of the
examination.  The ALJ could consider this portion of the report less significant than the doctor's
other findings, and we shall not reweigh the evidence on appeal." (citation omitted)).

17

Dudley's argument that the ALJ erred in failing to define what she meant by "significant weight" is also unconvincing.  Dudley cites no statute, case, or regulation in support of his contention that a greater explanation of the weight afforded to a non-controlling medical opinion requires additional description—besides the general standard that an ALJ must "explain her analysis of the evidence with enough detail and clarity to permit a meaningful appellate review." (ECF 24 at 16 (citing *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994)).  As already discussed, the ALJ did minimally articulate her reasoning for discounting Dr. Brooks's and Ms. Kracker's opinion by noting its inconsistency with Dr. Jansky's testimony and other medical opinions of record.  Once again, this is not improper.  *See Young*, 362 F.3d at 1001 ("The ALJ evaluated the evidence submitted by the many medical experts in this case and where that evidence was conflicting, he resolved those conflicts by giving more weight to some evidence and less to others. . . . This is not a case where a treating physicians' opinion was disregarded in favor of the opinion of a consulting physician.").

Finally, the ALJ's brief consideration of Dudley's lack of treatment does not, in and of itself, require a remand.  While discussing Dudley's RFC, the ALJ observed:  "Regarding mental health issues, [Dudley] has not been treated with psychotropic medication or mental health counseling/therapy."  (AR 778).[4]  This is despite—as the ALJ noted—the fact that Dudley was diagnosed with mild to moderate generalized anxiety disorder during the April 2015 psychological examination with Dr. Brooks and Ms. Kracker.  (AR 778; *see also* AR 626).  In general, "an ALJ must not draw inferences about a claimant's lack of treatment without

---

[4] The ALJ also noted a lack of treatment in 2018—the time period after the date the Commissioner awarded Dudley benefits.  (AR 778; *see also* AR 962).

18

exploring the reasons for the inaction." *Ray v. Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019).

That being said, "the ALJ was not required to conclude that the claimant suffered from a severe

mental impairment because there was a lack of medical evidence." *Dross-Swart v. Astrue*, 872

F. Supp. 2d 780, 794 (N.D. Ind. 2012). Dudley fails to point to any evidence in the record where

a medical provider prescribed psychotropic medication or mental health counseling or therapy.

Moreover, the ALJ did not discuss Dudley's supposed lack of treatment in relation to her

credibility determination—as was the case in *Ray*—but in her discussion of the medical opinion

evidence in the record. (*See* AR 778); *see Gotz v. Barnhart*, 207 F. Supp. 2d 886, 900 (E.D. Wis.

2002) ("The ALJ did not base her finding on plaintiff's lack of psychiatric treatment. Rather, she

noted that the absence of treatment was one reason for attaching significant weight to the reports

of Drs. Spear and Kaplan. This was not error.").

      That being said, the ALJ's treatment of the medical opinion evidence in the record is not

flawless. While the ALJ is free to weigh conflicting opinion evidence, *see Young*, 362 F.3d at

1001, "[she] may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586,

592 (7th Cir. 2012) (collecting cases). Here, the ALJ seemingly resolved conflicts in the record

by relying on the testimony of Dr. Jansky—assigning his testimony "great weight." (AR 779).

But in doing so, the ALJ failed to mention the portion of Dr. Jansky's testimony that suggested

Dudley needed additional limitations not reflected in the RFC. While Dr. Jansky testified that

Dudley "has tremendous amount of ability" and "has a lot to offer an employer," Dr. Jansky also

testified that it would "take some time for him to get back into . . . the routine of employment,"

and that he would possibly require "the assistance of a job coach or someone to oversee him . . .

." (AR 1179). Despite her supposed reliance on Dr. Jansky's testimony, the ALJ does not

elaborate on either of these potential limitations in her decision, and they are not reflected in the RFC or the hypothetical to the VE. (*See* AR 774, 1209-10). "An ALJ cannot rely only on the evidence that supports her opinion." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (citation omitted). It is not clear whether Dr Jansky's testimony regarding Dudley's need for a "job coach" or additional time was "not credited or simply ignored." *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir. 1984). Thus, though Dudley's second argument is not particularly persuasive, the ALJ should re-evaluate Dr. Jansky's testimony to the extent it necessitates additional limitations not currently reflected in the RFC.

    In conclusion, the ALJ's decision concerning the weight that she afforded the medical source opinions of record is supported by substantial evidence. While Dudley argues that some opinions should have been attributed more weight, the ALJ adequately explained her reasoning and it is not the Court's place to second guess her how she weighed the evidence before her. *See Clifford*, 227 F.3d at 869. Further, the ALJ explained her analysis with sufficient detail to permit meaningful review of her decision—at least as to the weight assigned to the opinion evidence in the record—and did not improperly consider Dudley's lack of treatment. Accordingly, Dudley's second argument does not serve as an independent basis to remand this case. However, because this case is being remanded on Dudley's first argument, the ALJ should also address any contradictory evidence suggesting the need for additional limitations in the RFC—namely, the more conservative limitations expressed in the opinions of Dr. Brooks, Ms. Kracker, and Dr. Jansky that the ALJ failed to discuss.

*E.  Credibility Analysis*

Lastly, Dudley argues that the ALJ erred in finding that his symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record."  (ECF 24 at 18 (citing AR 776)).  More specifically, Dudley asserts that the ALJ applied the wrong standard in weighing his symptom testimony and failed to articulate why his description of his symptoms was not credible.  (*Id.*).  Dudley also contends that the "ALJ's quick-citation" to his daily activities fails to support the ALJ's credibility determination, and in any event, does not negate the opinion of Dr. Brooks and Ms. Kracker who were largely aware of the same activities.  (ECF 24 at 18-19 (citing AR 624)).

As an initial matter, the Seventh Circuit has criticized the "not entirely consistent" phraseology like that used here as "meaningless boilerplate."  *See Hostetter v. Saul*, 841 F. App'x 983, 986-87 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)).  The use of boilerplate language alone, though, does not necessitate remand.

> While the ALJ's boilerplate language does not match the statutory standard, an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong.  Moreover, under SSR 16-3p . . ., the ALJ must "evaluate whether the statements are consistent with the objective medical evidence and the other evidence."  Therefore, the use of the language "not entirely consistent" is not, by itself, a basis for remand.

*Blackwell v. Berryhill*, No. 2:17-cv-00460-JVB-APR, 2019 WL 1397476, at *5 (N.D. Ind. Mar. 27, 2019) (citations omitted); *see also Joyce W. v. Berryhill*, No. 2:18-cv-104-JVB-JEM, 2019 WL 2353500, at *5 (N.D. Ind. June 3, 2019); *Torres v. Berryhill*, No. 2:17-cv-393, 2019 WL 2265367, at *6 (N.D. Ind. May 28, 2019).  Indeed, "[t]he 'not entirely consistent' language is . . . a problem . . . only if the ALJ does not identify and explain the relevant inconsistencies or other

reasons for discounting the subjective complaints." *Hostetter*, 841 F. App'x at 986-87 (citing *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018)).

Generally, the Court will "overturn an ALJ's adverse credibility determination only if it is unsupported by substantial evidence or rests on legally improper analysis." *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (citing *Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th Cir. 2016)).  An ALJ's determination as to credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Norris v. Astrue*, 776 F. Supp. 2d 616, 632 (N.D. Ill. 2011) (citing SSR 96-7P, 1996 WL 374186, at *2 (July 2, 1996)); *see also* SSR 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017) (superseding SSR 96-7P) ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

Here, the ALJ's credibility determination was based on substantial evidence and there is nothing to suggest that it was the result of improper analysis.  In support of her decision, the ALJ cited to Dudley's various activities including preparing simple meals, mowing lawns, snow removal, household repairs, shopping, riding a bicycle, attending to personal care, woodworking, working on guns, helping with dishes and laundry, taking care of dogs, hunting, fishing, and handling money.  (AR 778 (citing AR 297-304, 328-35, 626); *see also* AR 1185-86).  Similarly, the ALJ noted Dudley's prior work at his father's lumberyard.  (AR 778).  While Dudley takes

22

issue with the ALJ's discussion of his daily activities and prior work, the Commissioner's own regulations explicitly permit such considerations. *See* 20 C.F.R. § 404.1529(c)(3), *see also Burmester v. Berryhill*, 920 F.3d 507, 510-11 (7th Cir. 2019).

If the ALJ had stopped her credibility analysis there it may have been insufficient. *See Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("There is a significant difference between being able to work a few hours a week and having the capacity to work full time."); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("Although [the ALJ] briefly described Villano's testimony about her daily activities, he did not, for example, explain whether Villano's daily activities were consistent or inconsistent with the pain and limitations she claimed."); *see also Vian v. Comm'r of Soc. Sec.*, 15-cv-00040-SLC, 2017 WL 461561, at *10 (N.D. Ind. Feb. 2, 2017) ("[A]s the Seventh Circuit Court of Appeals has emphasized, a person who suffers from mental illness will have better days and worse days. . . . [An ALJ] must consider whether the claimant can hold a job even on low days." (citations omitted)).

The Court, however, "read[s] the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted)). The ALJ did not limit her analysis to Dudley's daily activities, but also cited to Dr. Jansky's testimony as well as Dr. Brooks's and Ms. Kracker's medical opinion—who reviewed similar evidence of daily activities. (ECF 779). The ALJ also cited multiple instances in the medical record where Dudley was described as cooperative, pleasant, awake, alert, fully oriented with appropriate mood and affect, had a normal fund of knowledge, good insight, normal speech, and normal behavior. (AR 784 (citing AR 562, 566, 570, 650, 1147)). In that the ALJ based her credibility determination on several permissible factors, the ALJ's credibility determination was

adequately articulated and not "patently wrong." *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) ("[T]he ALJ's credibility determination here was not 'patently wrong' because the ALJ found Hall 'not fully credible' for many specific reasons supported by the evidence."). Accordingly, the ALJ's credibility determination is adequately supported and does not serve as an independent basis to remand this case.

## IV.  CONCLUSION

In sum, one of Dudley's three arguments on appeal warrants remand of the Commissioner's final decision.  Accordingly, I RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 9th day of July 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge